IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
03 DEC -5 PM 1:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| BARBARA WINTERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 01-JEO-2809-W ) |
| ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION and MIKE MATHIS, | ) ) ) ) |
| Defendants. | ) ) |

ENTERED
DEC - 5 2003

### MEMORANDUM OPINION

Before the court is the "Motion for Summary Judgment" filed by Defendants Alabama Department of Mental Health and Mental Retardation and Mike Mathis (hereinafter "the defendants"). (Doc. 11). For the reasons set forth below, the court finds that the defendants' motion is due to be granted in part and denied in part.

### BACKGROUND

#### Facts[1]

Plaintiff Barbara Winters (hereinafter "the plaintiff") was educated at Shelton State Community College in Tuscaloosa, Alabama, where she received her Associates Degree in Nursing in 1991. The plaintiff is a Registered Nurse (hereinafter "RN") based on her education and training. The plaintiff began her nursing career upon graduation at DCH Regional Medical Center in Tuscaloosa in August 1991. (Winter App.).[2]

---

[1] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiffs. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[2] The application is located at exhibit 1 to document 16.

18

On January 13, 2000, the plaintiff applied for a position as an RN with the Mary Starke Harper Geriatric Psychiatry Center ("Harper Center") located in Tuscaloosa. The Harper Center is one of six inpatient facilities operated by the Alabama Department of Mental Health and Mental Retardation (hereinafter "the Department") for treatment of individuals with serious mental illnesses. The Harper Center provides care and treatment for patients over sixty-five years of age with acute psychiatric problems.

At the time of her application for the Harper Center position, the plaintiff had previous experience with the Department as a Licensed Practical Nurse (hereinafter "LPN") at the Bryce Hospital's Medical Convalescent Care Unit, (hereinafter "Bryce") from November 1983 through 1987 and with the defendant's S. D. Allen facility (hereinafter "Allen") from 1987 until August 1991, less one 6-month period which was used for educational purposes. (Winters' Dep. at 21, 33, 36, 38). After becoming an RN, she worked again at Bryce part-time from the spring of 1992 through September 1992 when she went full time. (*Id.* at 54). She later transferred back to the Allen facility and worked there until December 1996. (*Id.*). After leaving the Department in 1996,[3] the plaintiff worked as an RN with geriatric patients at Alacare, a home-health care company, until February 2000.[4] (*Id.* at 57-59).

In her application, the plaintiff stated that the minimum acceptable salary for the RN position was $31,000.00. (Winter App.; Winter Dep. at 74). On or about January 28, 2000, she was telephoned by Mike Mathis (hereinafter "Mathis"), the Personnel Director for the Harper

---

[3] At the time the plaintiff left the defendant's employment in 1996 she was being paid as a "Range 71/Step 11" employee. (Ex. 4 at Request for Admission No. 16).

[4] As of February 2000, the plaintiff received certification by the American Nurses Credentialing Center (hereinafter "ANCC") in psychiatric nursing. To receive this certification, she sat for an area-specific examination at the University of Alabama, Birmingham, in 1997.

Center, and told that she had been accepted for the RN position. During the telephone call with Mathis wherein he offered her the RN position, she was told by Mathis that her salary was to be $30,750.00 per year (Range 71, Step 7), plus an additional $2.00 per hour for the shift differential, which was paid to the nurses working on the evening and midnight shifts. (Winters Dep. at 74). The plaintiff states that when she was told her salary she tried to ask Mathis about getting her a higher salary. Mathis responded that that amount was the offer. (*Id.*). It was the plaintiff's impression that there was no way that she could get more than the specified amount. (*Id.*). Before coming to work, she met with Mathis. He told her that the Department did not have any money to increase salaries. (*Id.* at 76, 138-39).

Darwin Hall was hired at the same time as the plaintiff. In his application, Hall did not put a minimum starting salary. He interviewed for an RN position in the Harper Center in January 2000. He had worked as an RN from January 1988 until starting at the Harper Center in February 2000. Hall had not worked for any Department facility prior to his employment with the Harper Center. Hall's longest term of employment was in Oregon from 1989 through 1998, and it was not focused on treatment of the elderly. Hall did not have much experience caring for individuals with mental illness. He was employed as a truck driver from September 1985 through January 1988. He was originally offered $32,392.00 per year, a Range 71, Step 9 classification; but, after negotiations, Mathis spoke with Harper Center Director Kathy Grissom (hereinafter "Grissom") and Hall was offered a Step 10 position at $33,082.00. (Ex. 3 Notes at 000194).

Thomas Fletcher was also offered a position as an RN at the Harper Center. Mathis sent a letter to Fletcher on April 7, 2000, confirming an offer of $31,507.00 (Range 71, Step 8). In

3

the twenty-six years prior to being hired by the Department, Fletcher worked as an occupational nurse at a Goodrich-Uniroyal plant. According to Mathis' review and consideration of Fletcher's job application, when Fletcher worked as an occupational nurse he did not garner any mental health or geriatric experience. Fletcher did work from June 1974 through August 1976 in a facility for mentally challenged individuals and about two months at a nursing home in 1974.

According to Mathis, there is a Department policy or procedure that a successful applicant for an RN position with the Department will have a base salary at "Range 71" of $26,533.00 - $40,212.00. (Mathis Aff. at p. 2). If hired, the employee will be granted one "step" above the base for each year of RN experience prior to coming to work for the defendant. (Mathis Dep. at 168).

As a part of the hiring process, the plaintiff, Hall, and Fletcher each were required by the Department in February 2000 to take a "medication administration test." The plaintiff scored higher on this test than either Hall or Fletcher.[5] (Mathis Dep. at 247-49).

Around mid-March 2000, the plaintiff complained to the Director of Nursing, Maggie Chivington, about what she considered to be unfair pay disparities between her and the same or less qualified and/or experienced men at the Harper Center and other Department facilities. Chivington agreed with the plaintiff and said that men have always made more money than women and will always make more. (Winter Dep. at 82). She did recommend that the plaintiff talk with Mathis again about it. However, the plaintiff did not again talk with Mathis about the situation. (*Id*. at 86). She left the Department in the summer of 2000. (Winter Dep. at 147).

---

[5] Fletcher scored a 94, Hall scored a 96, and the plaintiff scored a 98. (Mathis Dep. at 247-49).

4

### The Plaintiff's Claims

The plaintiff brings forth three separate claims against the defendants concerning her employment with the Department at the Harper Center. First, she claims that the Department violated Title VII in paying her less because she was a woman. Second, she contends that the Department similarly violated the Equal Pay Act (hereinafter "EPA"). Third, she contends Mathis denied her equal protection in pay, benefits, and advancement opportunities in violation of Title 42, United States Code, Section 1983.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 133, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be

believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

A plaintiff may assert claims based on unequal pay for equal work under the Equal Pay Act and Title VII. Under both, the plaintiff must establish a prima facie case of discrimination. Under the Equal Pay Act, the plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort, and responsibility and which are performed under similar working conditions. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974). Under Title VII, a prima facie case of sex discrimination requires showing a connection between the plaintiff's gender and the adverse employment decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). The plaintiff may establish a prima facie case under the Equal Pay Act by demonstrating that she occupied a substantially similar job and was paid less. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). Under the disparate treatment model of a Title VII action, "there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of proving an intent to discriminate on the basis of sex." *Id.* at 1526.

## Title VII Claim

The plaintiff alleges that the Department violated her rights under Title VII by not allowing her to negotiate her salary and by paying her less than other male nurses. As just noted,

in order to succeed in establishing a prima facie case of job-related disparate treatment, the Eleventh Circuit specifically requires that the plaintiff show that she is female and that the job she occupied was similar to higher paying jobs occupied by males who were paid more. *Miranda*, 975 F.2d at 1526. She also must demonstrate that the defendants acted with an intent to discriminate on the basis of her gender. *Miranda*, 975 F.2d at 1526.

In support of her arguments, the plaintiff argues that she was not allowed to negotiate her salary while Darwin Hall, a man applying for the same position with the Harper Center, was allowed to negotiate his salary. She also asserts that based on her job experience in comparison to that of Hall or Fletcher, she was more qualified to do her job than either of them. She notes that even Mathis, the Harper Center Personnel Director, agrees that the Department's policy would be violated if a woman was not provided the same opportunity to negotiate her salary as a man. (Mathis Dep. at 297).

Once the prima facie case has been established, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the disparate treatment. *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 893 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The Department concedes for purposes of this motion that the plaintiff has set forth a prima facie case of discrimination concerning her pay. It counters, however, that the pay differential between the plaintiff and the others does not relate to their respective genders but rather is premised on the difference in the number of years of RN experience between them. In support of its reason, the defendants state that Mathis testified in his deposition that it is a routine practice to consider prior RN experience in determining an appropriate salary. The Department further argues that because Hall had more years of nursing experience, he was offered a higher starting salary.

Lastly, it states that Kathy Grissom, the Harper Center Director, and not Mathis, had the authority to set salaries, and the plaintiff never approached her to discuss the situation.[6] (Doc. 17 at 4, citing Winters Dep. at 139).

The plaintiff counters that the Department's reasoning is not sufficient. (Doc. 15 at 11). She further contends that her background, skills, knowledge, and experience as a Department employee outweigh any characteristics the male applicants had as an RN. (*Id.*).

The relevant question at this juncture is whether the plaintiff has sufficiently challenged the defendants' proffered reason for the differentiation in pay to overcome the defendants' motion for summary judgment. In *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), the court stated:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan*, 100 F.3d at 1072 (citation and internal quotation marks omitted); *see also Walker*, 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude

---

[6] The Department notes that there is a factual dispute with respect to the verbal offer of employment made by Mathis. The plaintiff claims that Mathis immediately told her that the issue of her salary was non-negotiable. (*See* Doc. 17 at 3-4). Mathis disputes this in his deposition, stating that he told the plaintiff that he would see what he could do. (Mathis Dep. at 198). He also states that he spoke with Kathy Grissom, who informed him approximately two days later that she could not go up any more on the plaintiff's salary. (*Id.* at 198-99). Mathis stated that he conveyed this information to the plaintiff over the telephone.

Although, the evidence that has been brought forward thus far supports the fact that Mathis did not have authority to set salaries but rather had to go through Grissom, the Director, this does not change the result herein because the plaintiff alleges that Mathis told her the salary was non-negotiable. It is the employer's conduct that is at issue.

> that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

The court finds that under the circumstances, for purposes of summary judgment, the plaintiff has offered "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[ ] for its action that a reasonable factfinder could find the [defendant's reason] unworthy of credence." *Id.*

In the present case, the evidence shows that the plaintiff was hired at the rate of $30,750.00 per year. This was $757.00 less per year than Fletcher and $2,332.00 less than Hall, her comparators. Though the Department purports to be bound by a formula whereby salary is increased one "step" above the base for each year of RN experience, the plaintiff contends that the step increases were implemented on a subjective basis and she came out on the losing side. In essence, she argues that her experience and aptitude in geriatric and mental illness nursing were not considered.

The evidence concerning the RNs that were hired about the time of the plaintiff shows the following:

| Applicant | Gender | RN Experience | Step |
|---|---|---|---|
| Plaintiff | Female | 7½ years (88 months[7]) | 7 |
| Hall | Male | 12 years (144 months) | 10 |
| Corkerin | Female | 13 years (156 months) | 9 |
| Browning | Female | 20 + years (240 months) | 12 |

---

[7] The plaintiff's application indicates approximately 88 months experience as an RN. The resume the plaintiff attached indicates approximately 117 months RN experience. The plaintiff also states in her affidavit that she has over eight years experience. She also so states in her deposition. (Winters Dep. at 137).

9

    Fletcher    Male   26 years (312 months)   8[8]

(Mathis Aff. at Ex. 1).

  With regard to the claims brought under Title VII, the court is not convinced that there are no issues of material fact warranting the granting of the defendants' motion. The defendants assert that it is the policy, although unwritten, of the Department that increases in hiring salaries will be given as determined by the number of years of experience in nursing. Indeed, the Department notes that Cindy Browning, a female hired at the same time as the plaintiff, Hall, and Fletcher was given the highest starting salary based on having a higher number of years of experience. (Doc. 13 at 7). However, it is clear from a review of the record, particularly the compilation just cited above, that the Department's application of the unwritten policy is not consistent. There are a number of troubling points. First, no employee's step level is reflective of his or her actual experience, although the plaintiff comes closer than anyone else. Second, Hall has less experience than Corkerin, yet he was given a higher "Step" than she was.[9] Third, the employees with over twenty years experience were not capped at "Step 18", the highest level, but were paid at "Step 8" (Fletcher) and "Step 12" (Browning). Although the Department may be able to explain the discrepancies at a later juncture, it has failed to satisfy the court on its motion for summary judgment.

  In finding that the motion is due to be denied at this point, the court is not suggesting that it is bothered by the defendants' use of "RN" experience as the criteria for determining starting

---

[8] Although Corkerin and Browning are not comparators in the usual sense, the information concerning them is instructive.

[9] The court recognizes that Corkerin is a female. However, the Department's inconsistent use of the step increase is what is noteworthy.

10

salaries. To the contrary, it appears that this is an objective measure to determine appropriate pay levels. What the court does find problematic for purposes of summary judgment is that there appears to be inconsistent application of that policy that precludes the granting of summary judgment on this claim. The court further notes that the fact that the policy is unwritten does not, in and of itself, demonstrate pretext.[10]

### Equal Pay Act Claim

Under the Equal Pay Act there is a prescribed form of strict liability:

> Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a 'factor other than sex' is responsible for the differential. If the defendant fails, the plaintiff wins. The plaintiff is not required to prove discriminatory intent on the part of the defendant.

*Miranda*, 975 F.2d at 1532, citing *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539 (11th Cir. 1991). The Equal Pay Act prohibits employers from paying employees at a rate less than employees of the opposite sex at the same establishment ". . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions. . ."

An employee demonstrates that a prima facie case of discrimination pursuant to the Equal Pay Act has occurred by showing that a specific male comparator or comparators has earned higher wages for the same or similar job. Once the employee presents a prima facie case, the employer may avoid liability by showing that the pay differences are based on (1) a seniority

---

[10] To the extent that the plaintiff argues that she talked with the Director of Nursing (Chivington) and she stated, "Men have always made more, they will always make more, that's the way it is," this evidence does not demonstrate pretext because there is no evidence that Chivington was a decisionmaker. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003), citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring) ("'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process at issue will not satisfy the employee's burden'").

system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production, or any other factor other than sex. 29 U.S.C. § 206(d)(1).

As already discussed, the plaintiff contends that she was not offered equal pay because she is a woman and that her substantial experience in the geriatric and mental illness areas of nursing was disregarded. The Department counters that the disparity is due to the difference in RN experience.

Premised on the court's observations and conclusions on the last claim, the motion for summary judgment is due to be denied as to this claim as well. Although not impressed by the plaintiff's argument that the defendants must consider the nature of her RN experience (geriatric and mental health), the differing application of the "RN" experience precludes the granting of the motion on this claim as well.

## 42 U.S.C. § 1983 Claim Concerning Mathis

The plaintiff asserts a § 1983 claim against Mathis in his individual capacity. Section 1983 provides in pertinent part:

> ...every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

To act under color of law has been defined by the United States Supreme Court as acting with power possessed by virtue of the defendant's employment with the state. *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988). *West* also states that "state employment is generally sufficient to render the defendant a state actor." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18, 102 S. Ct. 2744, 2752 n.18, 73 L. Ed. 2d 482

(1982)). In order to prevail in an action pursuant to § 1983, the plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived a person of rights secured by the Constitution or laws of the United States. *Paratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S. Ct. 662, 664-65, 88 L. Ed. 2d 662 (1986).

Herein, the plaintiff asserts there is a viable § 1983 claim for disparate treatment based on the actions of Mathis. The plaintiff complains that Mathis, while employed as the Harper Center's Personnel Director, denied her the same opportunity to negotiate her salary that Hall and possibly Fletcher were given. The defendants retort that Mathis did not have the authority to negotiate with the plaintiff and she never approached Grissom concerning her salary. (Doc. 17 at 6).

It is undisputed that salaries were set by Grissom and not Mathis. The court is not persuaded that the plaintiff has asserted a § 1983 claim against Mathis as the evidence shows that he did not have the requisite authority.[11] This claim is due to be dismissed.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that the defendants' motion for summary judgment is due to be granted in part and denied in part.

---

[11] Unlike the other claims, this absence of authority is significant when dealing with an intentional constitutional claim under § 1983.

**DONE**, this _5th_ day of December, 2003.

_____
**JOHN E. OTT**
United States Magistrate Judge